Argued November 21, affirmed December 17, 1958

DeGUIRE ET AL v. WEST FORK LOGGING
COMPANY ET AL

332 P. 2d 1070

*Sidney A. Milligan,* of Eugene, argued the cause for appellant. With him on the brief were Milligan & Brown, of Eugene.

*Lawrence N. Brown,* of Salem, and *Kenneth E. Brown,* of Silverton, argued the cause and filed a brief for respondents.

Before Perry, Chief Justice, and Rossman, McAllister and O'Connell, Justices.

O'CONNELL, J.

This is an action upon a written contract, by the terms of which the defendant West Fork Logging Company (designated in the contract as "Company") agreed to pay $35,000 to Charles DeGuire (designated as "Creditor"). The defendant Lee Downing, also a party to the contract, agreed to guarantee the payment

of one-half the amount owed by the Company at the time of default. The plaintiffs are the assignees of Charles DeGuire. The defendants appeal from a judgment in favor of the plaintiffs for the balance due under the contract. The amount agreed to be paid to Charles DeGuire was for his interest in the defendant West Fork Logging Company, an. Oregon corporation. The Company apparently was formed primarily for the purpose of entering into a logging contract with Multnomah Plywood Corporation, which contract was eventually consummated and by the terms of which West Fork Logging Company agreed to log certain timber owned by Multnomah Plywood Corporation. The contract between West Fork and the creditor Charles DeGuire, the plaintiffs' predecessor in interest, called for a down payment of $5,000 and the payment of the balance as West Fork was paid by Multnomah Plywood Corporation under the logging contract.

The contract between West Fork and Charles DeGuire also contained a paragraph reciting certain conditions of payment, the meaning of which is in question and which we are called upon to construe. The pertinent part of the paragraph reads as follows:

"CONDITION OF ACCOUNT AS STATED:

"The payment of the account as stated by the Company to the Creditor is conditioned upon this provision, to-wit: Company, as above stated, has contracted to do and perform certain logging for and in behalf of Multnomah Plywood Corporation. Should Multnomah Plywood Corporation become bankrupt or otherwise void, the performance of said contract, on its part, then and in that event, the amount then due upon said account stated from the Company to the Creditor shall be construed as paid in full and any rights by Creditor against

Company shall thenceforth be fully discharged and satisfied, except:

"(a) Should the Company, at action, claim or other proceeding, recover from Multnomah Plywood Corporation any amount on account of the breach of said contract by Multnomah Plywood Corporation the amount so received shall be paid, less the costs of such recovery unto the Creditor: or

"(b) Should the Company institute action as against Multnomah Plywood Corporation on account of said logging contract and recover judgment in such action or suit, the proceeds received upon such judgment shall be paid to the creditor to the full extent of such judgment, if necessary, to satisfy Creditor's account as above stated.

"(c) Nothing above stated shall be construed to limit the responsibility of the Company to the Creditor by reason of Company's breach of said contract with Multnomah Plywood Corporation."

Some time after this contract was entered into Multnomah Plywood Corporation brought a suit for a declaratory judgment against the defendant West Fork Logging Company for the purpose of obtaining a judicial construction of the logging contract. The principal question presented in that proceeding was whether the contract terminated when West Fork Logging Company had delivered 30 million board feet of merchantable logs to Multnomah Plywood Corporation or only after 60 million board feet had been delivered. Paragraphs VIII and IX of the Complaint for Declaratory Judgment recite, in part, as follows:

"VIII.

"That Paragraph 7 of said logging contract * * * provides in part as follows: ' * * * The cost of roads to be built under this contract are to be amortized over the 60,000,000 b.f.m. of merchantable timber cut under this contract.'"

"IX.

"That inasmuch as said logging contract, Exhibit 'A', shall terminate when the defendant has cut and delivered 30,000,000 b.f.m. of marketable logs and defendant's cost of said roads were 'to be amortized over the 60,000,000 b.f.m. of merchantable timer cut under this contract,' the defendant has not and will not at the termination of said logging contract be fully reimbursed for its costs to build said roads and there will be due and owing the defendant, when the defendant has logged and delivered a total of 30,000,000 b.f.m. of marketable logs from the plaintiff, one-half of the reasonable cost of building said roads, a sum of $36,000, which the plaintiff hereby offers to pay defendant and hereby tenders to the defendant, said tender to be effective at such time as defendant shall have logged and delivered to the plaintiff a total of 30,000,000 b.f.m. of marketable logs.

"WHEREFORE, the plaintiff prays that the Court make and enter a decree that the logging contract, Exhibit 'A', terminate at such time as the defendant shall have delivered to the plaintiff 30,000,000 b.f.m. of marketable logs and shall further adjudge and decree that at the time that the defendant shall have delivered to the plaintiff a total of 30,000,000 b.f.m. of marketable logs there shall be paid to the defendant the sum of $36,000 which sum shall be the total of the unpaid portion of the defendant's cost in building said logging roads."

In response to the Complaint For Declaratory Judgment West Fork Logging Company filed a pleading entitled "Plea In Abatement And Answer." In its plea in abatement West Fork alleged the pendency of a suit for the reformation of the logging contract brought by West Fork against Multnomah Plywood. In that part of its pleading entitled "Answer On Merits", West Fork answered by way of a general denial and "by way of further and separate Answer

and by way of Cross-Complaint." In the affirmative answer and cross-complaint the following allegations are made:

> " * * * That pursuant to the terms and provisions of said contract, the defendant did, at its own cost and expense, construct the logging roads on property under the control of the plaintiff, at a total cost to the defendant of approximately One Hundred Fifty Thousand ($150,000.00) Dollars. That should the said contract be terminated at the conclusion of harvesting 30,000,000 b.f.m. of marketable logs, the defendant would be entitled to reimbursement by the plaintiff in a sum proportionate to the amount of timber harvested and in the sum of Seventy-five Thousand ($75,000.00) Dollars."

In its prayer for relief West Fork asked that the logging contract be construed to be a contract for the harvesting of 60,000,000 b.f.m. of marketable logs, and then continues as follows:

> "In the alternative, and should the Court Decree that said contract shall terminate at the conclusion of the harvesting of 30,000,000 b.f.m. of marketable logs, then defendant prays that the unpaid portion of the defendant's cost in building the logging roads provided for in said contract be set at the sum of Seventy-five Thousand ($75,000.00) Dollars. Defendant prays for such other and further relief as may seem just and equitable in the premises."

In the declaratory judgment suit Multnomah Plywood was ordered to pay to West Fork the sum of $62,250 which represented the value of its interest in the logging road. The plaintiffs in the present action contend that out of this amount they are entitled to the payment of the balance due on the contract between defendant Company and Creditor, which balance amounts to $19,953.63. In support of this claim plaintiffs rely

upon sub-paragraph (b) of paragraph 3 of the contract. They contend that the defendants' cross-complaint in response to the suit for a declaratory judgment was the institution of an action on account of the logging contract and that the decree in that suit calling for the payment of $62,250 was the recovery of a judgment within the meaning of sub-paragraph 3(b). The defendants rely upon the introductory statement in paragraph 3 which provides, in part, that should Multnomah Plywood "void the performance of said contract" the Company is fully discharged, and they contend that West Fork's recovery in the declaratory judgment proceeding does not fall within the exception to paragraph 3 contained in sub-paragraph 3(b). The principal assignment of error urged by the defendants is that the trial court erred in refusing to accept this contention.

In support of their position that they did not "institute action" against Multnomah Plywood the defendants argue that the pleading which carried the caption "Answer and Cross-Complaint" was not in fact a cross suit against Multnomah Plywood with respect to their rights in the logging roads but that it was a defensive position which they were required to take in order to refute Multnomah Plywood's allegation that the defendants' interest in the road was worth only $36,000. They urge that West Fork "should not be bound to accept Multnomah Plywood's appraisal of the value of the roads at the risk of being considered as having commenced the suit."

■ We regard this position as untenable. We construe the proceeding by which West Fork Logging Company asserted its right with respect to the logging road as an "action" within the meaning of sub-paragraph

3(b) of the contract. By its pleading denominated "Answer and Cross-Complaint" West Fork Logging Company sought and obtained affirmative relief against Multnomah Plywood for the value of its interest in the road. If in the litigation instituted by Multnomah Plywood the respective interests of the parties in the road had not been adjudicated West Fork would have found it necessary to "institute action against Multnomah Plywood Corporation" and sub-paragraph 3(b) would have been applicable. The mere circumstance that the same relief was sought through a cross suit or action rather than through a separate suit or action should not bar plaintiffs from relief under sub-paragraph 3(b) of the contract. But looking at the substance of the agreement rather than its form, it seems clear that the parties intended that the plaintiffs' rights should extend to moneys recovered under circumstances such as existed in this case. The logging contract called for the amortization of the road as the timber was cut. In logging the first 30 million board feet of timber under the contract the payments made to the defendant by Multnomah Plywood were not only payments for defendants' work in removing the logs but also for defendants' interest in the road.

■ By the terms of the contract plaintiffs were entitled to be paid out of the moneys so received at the rate of one dollar per thousand feet net scale. The fact that the defendants received payment for the road in one lump sum, rather than in installments as a part of the payments under the logging contract, should not preclude the plaintiffs from recovery. The contract was designed to effect a sale of the plaintiffs' interest in the defendant company, including the asset consisting of the logging roads. That asset is now in the form of a judgment recovered by West Fork against

Multnomah Plywood. As we construe the contract plaintiffs are entitled to that asset.

In the present action the plaintiffs sought recovery of the sum of $19,859.63 and in their prayer for relief asked for a judgment for that amount plus interest against the defendant West Fork Logging Company and they also asked for a judgment against the defendant Lee Downing for one-half of that amount, to wit, the sum of $9,929.82 plus interest. The defendants request us to make clear that the entire judgment is for the sum of $19,953.63 and that the defendant Lee Downing is liable as guarantor for one-half that amount. We regard the judgment as creating joint and several liability as contended by the defendants and conceded by the plaintiffs. The judgment also recited that "the writ of attachment heretofore issued be and the same is hereby preserved." The defendants attack this part of the judgment on the ground that the proceeding in the instant case is equitable in nature and therefore the trial court had no authority to preserve any rights which were incidental only to an action at law. The defendants are in error in denominating this proceeding as equitable in character. It is an action at law upon a contract. We express no opinion as to the effect, if any, of the recitation in the judgment that the writ of attachment is preserved.

The judgment is affirmed.